## Kehoe v. Kehoe

*Charles Shea, Jr.*, and *Arthur H. James*, for petitioner.

*Thomas C. Moore* and *Roy B. Pope*, for plaintiff.

APONICK, J., January 8, 1952.—This is on defendant's petition to remove Patrick J. O'Connor, Esq., as master in a divorce action. We are asked to recall his appointment because of his allegedly close relationship with plaintiff's counsel. The pertinent paragraphs of the petition read:

"6. Your petitioner avers that said P. J. O'Connor, Esq., for a long period of time and continuing to this date has been on close personal and social relationship

with counsel for plaintiff and has had and still has a great deal of business and personal relations with said counsel for plaintiff, being continuously associated with said counsel for the plaintiff in his legal business. . . .

"8. By reason of said relationships petitioner avers and believes that said P. J. O'Connor, Esq., will be unable to be strictly impartial, disinterested and free from bias or suspicion in the performance of his duties."

The petition is well-nigh unprecedented and is wholly without merit. Therefore it must be dismissed. Mr. O'Connor will remain as master.

Mr. O'Connor did not seek the appointment. No one suggested his name. We had need for a lawyer of maturity and learning who would be patient yet firm with both the parties and their counsel. Mr. O'Connor's name came to our mind and we, therefore, appointed him. We took for granted that as a respectable member of our bar he would be unbiased, fair, and impartial. We have no reason to think him otherwise now. We do not propose to conduct an inquiry into the closeness of the friendships among our lawyers before making appointments in these cases. We trust that any officer of this court who feels he is unable to discharge his duties fairly and objectively will decline appointment.

We will concede that masters are quasi-judicial. Everyone concedes that a judicial officer has to be objective. Judges do not acquire that virtue only after ascending the bench; it is too late then. There cannot be any "cooling-off period" while they divest themselves of their friendships and their likes as well as their dislikes. If such were the case, then in the small judicial districts where there is but one judge and a mere handful of practitioners, all more or less friendly to the judge, the wheels of justice would never get

underway. Judges had to learn their lessons as lawyers. Lawyers cannot allow their friendship with their clients, nor with each other, to determine the amount of zeal and vigor that should be injected into a matter. We have never yet encountered a lawyer who softened his legal blows because opposing counsel and he happened to be friendly or were closely associated in other matters. Any lawyer who did would soon be without clients.

Lawyers are concerned not so much with clients as they are with causes and certainly they very, very often turn away clients rather than compromise their duty to the court or to society. It does not require much effort of mind or will for a lawyer of honor to be faithful to the trust reposed in him by the court in appointing him master, despite the relationship between him and counsel for either side. We fear that defendant's estimate of our profession is not very flattering.

We have specifically asked defendant's counsel for some authority for their position and gave them a week in which to prepare their brief. A timely brief was submitted but not a single authority has been cited for their novel proposition. On the other hand, the amicus curiae, Herman J. Goldberg, Esq., has kindly furnished us with a whole host of citations wherein courts were considered perfectly qualified despite charges much graver than those hurled against Mr. O'Connor. Nowhere has it been held that a court is disqualified because of close friendship or association with one of counsel. In a case in neighboring Schuylkill County, Amesbury v. Amesbury, 19 Schuylkill 153, there was an attempt to remove the master because of his friendship for the opposing party's father. The court refused to recall the appointment. It is the only case in Pennsylvania wherein an attempt was made to remove the master for alleged bias.

The master was appointed May 29, 1951. Defendant's counsel filed the within petition on November 27, 1951, after they had been served with notice of master's hearing set for November 30, 1951. They prepared the rule for our signature. By its terms it required not only plaintiff but her counsel and the master himself to show cause why the latter should not be removed. Plaintiff filed her answer and her counsel, Messrs. Moore and Pope, filed a joint answer. They denied under oath any close relationship between counsel and the master. Mr. Moore recalls but four or five cases in 21 years in which he was associated with Mr. O'Connor, whereas Mr. Pope recalls none. Mr. Moore estimates that he was opposed to Mr. O'Connor in 8 or 10 cases, whereas Mr. Pope mentions "several." Mr. O'Connor filed a writing under oath in which he suggests the advisability of having an amicus curiae to guide him through these proceedings. In that paper, he denies any close relationship with either Mr. Moore or Mr. Pope and his estimates of cases with and against them are substantially the same as theirs. He further states that he knows of no reason why he cannot discharge his duties as master with all due fidelity to the court. Despite these three affidavits of prominent officers of this court, defendant's counsel called Mr. O'Connor for cross-examination. They have been unable to tell us what they expected to show by him. It was obvious that they planned a "fishing trip." They have nothing else to offer. Mr. O'Connor, however, did not refuse to take the stand but sought guidance and we thereupon asked Mr. Goldberg to favor us as amicus curiae.

Mr. Goldberg asks that we consider whether the petition is sufficient in law. He likewise points out that on the record, the petition comes too late. He suggested that it should have been signed by counsel and not by defendant personally, and finally he wondered about

the propriety of including plaintiff's counsel and the master as respondents in the rule.

As we stated at the outset, the petition is legally insufficient; it does not make out a case; it will be dismissed. We are also of the opinion that defendant's counsel ought not to have waited until after being served with notice of master's hearing to take formal steps looking toward the master's removal. They have delayed the case at least from November 30th until such time as the master can fix for hearing. Their indifference from late spring until late fall belies the importance which they now attach to the master's relationship with opposing counsel.

It would have been more impressive on this court had defendant's counsel signed the petition as a certification of their belief as to its sincerity. They joined plaintiff's counsel and the master as respondents but made no attempt to put themselves in the case. However, the petition, not being a pleading in divorce under the Rules of Civil Procedure, is not improperly executed. On the other hand, we are now satisfied that plaintiff's counsel should not have been made respondents in the rule; they have no place as parties in this divorce action. Plaintiff's answer would have raised whatever issue was to be raised, and if need be, defendant's counsel could have called his wife's counsel for direct examination. Of course, with them out of the rule they could not call them for cross-examination. We most certainly feel that the master should not have been made respondent in the rule, nor can we permit him to be called for cross-examination. Allowing him to remain as respondent or to be called for cross-examination, immediately stamps him "adverse" to defendant, which is precisely what defendant is complaining about.

We regret that Mr. O'Connor has been subjected to these unpleasant proceedings. He has our assurance,

however, that our trust and confidence in his ability and integrity are unshaken and are as firm as ever. We have not the slightest doubt in our mind about his fairness and impartiality, and we are certain that he will be fair and impartial in discharging his duties as master in this case.

The case has been delayed long enough. The master is instructed to proceed with his hearing at the earliest convenient time.

Accordingly, rule to show cause is discharged and defendant's petition to remove master is dismissed.